UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO.: 07-20793-CIV-GOLD/McALILEY

BARRY E. MUKAMAL, AS LIQUIDATING
TRUSTEE AND DIRECTOR AND OFFICER
TRUSTEE OF FAR & WIDE CORP., ET AL.,

      Plaintiffs,

vs.

PHIL BAKES, ANDREW C. McKEY, CRAIG
TOLL, GEORGE GREMSE, WELLSPRING
CAPITAL MANAGEMENT LLC, LOAN CAPITAL
FUNDING LLC, CARL M. STANTON, GREG
S. FELDMAN, DAVID C. MARIANO, and
JACOB B. FORTIN,

      Defendants.

_____/

## ORDER GRANTING DEFENDANTS' MOTION TO DISMISS AMENDED COMPLAINT

THIS CAUSE is before the Court on Defendants' Rule 12(b)(6) Motion to Dismiss

Counts I through XVI of Amended Complaint with Prejudice [DE 48].  The parties have

filed a Response [DE 54] and Reply [DE 57], and I held a hearing on the motion on April

18, 2008. During the hearing, Plaintiff conceded that Counts II, IV, and VI of the Original

Complaint, which were previously dismissed without prejudice, should be dismissed with

prejudice as discussed in my previous Order On Defendants' Motions to Dismiss [DE

40] (the "Nov. 2 Order").

This case arises from an adversary bankruptcy proceeding involving Far & Wide

enterprise ("Far & Wide"), a conglomeration of travel companies consisting of Far &

Wide Corporation, Far & Wide Travel Corporation, Adventure Center, Inc., African

Travel, Inc., Far & Wide International, Inc., and Travel Media Services Corporation

1

(collectively, the "Debtors"). The allegations asserted by Plaintiff Barry Mukamal, as liquidating trustee and director and officer trustee of Far & Wide Corporation, which must be taken as true in deciding a motion to dismiss, are stated in the Nov. 2 Order and need not be duplicated here. To the extent that the Amended Complaint includes new allegations, I will discuss these new allegations where necessary.

On December 5, 2007, following dismissal of Counts I through VI of the Original Complaint, Plaintiff Mukamal filed an 82-page Amended Complaint consisting of sixteen counts encompassing 480 paragraphs. (See Am. Compl., DE 48). The allegations in the Amended Complaint fall into the following categories: (1) derivative creditors' claims, consisting of Counts I, and III through VII; (2) direct Debtors' claims, consisting of Counts II and VIII through XII; and, (6) bankruptcy claims, consisting of Counts XIII through XVI. The direct claims can be further categorized into: (1) a deceptive and unfair trade practices claim (Count II); (2) breach of fiduciary duty of loyalty and related aiding and abetting claims (Counts VIII,[1] IX and X); and, (3) breach of fiduciary duty of care claims (Counts XI and XII). The derivative claims, which are mirror images of the direct claims, are pled in the alterative.[2]

---

[1]

As a result of a clerical error, the Amended Complaint labels both the derivative claim for aiding and abetting breach of duty of care and the direct debtor claim for breach of duty of loyalty as Count VII. In this Order, I have re-labeled the latter as Count VIII.

[2]

Specifically, the derivative claims are pled as: (1) deceptive and unfair trade practices claim (Count I); (2) breach of duty of loyalty and related aiding and abetting claims (Counts III, IV, and V); and, (3) breach of duty of care claims (Counts VI and VII).

2

I have reviewed Defendants' Motion and related pleadings, as well as the applicable case law, and having considered the parties' arguments, I conclude that Defendants' motion must be granted in its entirety.

II.    Standard of Review

In determining whether to grant a motion to dismiss, the court must accept all the factual allegations in the complaint as true and evaluate all inferences derived from those facts in the light most favorable to the plaintiff. *Hoffend v. Villa*, 261 F.3d 1148, 1150 (11th Cir. 2001).

Although a plaintiff need not state in detail the facts upon which he bases his claim, Fed. R. Civ. P. 8(a)(2) "still requires a 'showing,' rather than a blanket assertion, of entitlement to relief." *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1965 n.3 (2007). In other words, a plaintiff's pleading obligation requires "more than labels and conclusions." *Id.* at 1964-65; *see also Pafumi v. Davidson*, No. 05-61679-CIV, 2007 WL 1729969, at *2 (S.D. Fla. June 14, 2007). The previous standard that there be "no set of facts" before a motion to dismiss is granted has thus been abrogated in favor of the requirement that a pleading must be "plausible on its face." *Bell Atl.*, 127 S. Ct. at 1968, 1974 (discussing *Conley v. Gibson*, 355 U.S. 41 (1957)); *see also*, *Watts v. Fla. Int'l Univ.*, 495 F.3d 1289, 1295 (11th Cir. 2007) ("While Rule 12(b)(6) does not permit dismissal of a well-pleaded complaint simply because it strikes a savvy judge that actual proof of those facts is improbable, the factual allegations must be enough to raise a right to relief above the speculative level.") (citing *Bell Atl.*, 127 S. Ct. at 1965) (internal quotations omitted)). In order to survive a motion to dismiss, the Plaintiff must have

3

"nudged [her] claims across the line from conceivable to plausible." *Bell Atl.*, 127 S. Ct. at 1974.

III.   Analysis

A.   Governing Law for Counts III through XII of the Amended Complaint

Where the rights and obligations of the parties are defined by state law, federal courts presiding over cases brought pursuant to the grant of jurisdiction under 28 U.S.C. § 1334, which covers civil actions related to bankruptcy proceedings, must apply the forum state's choice of law doctrines. *Official Comm. of Unsecured Creditors v. Donaldson, Lufkin & Jenrette Sec. Corp.*, No. 00-8688, 2002 WL 362794, *5 (S.D. N.Y. Mar 6, 2002); Nov. 2 Order at p. 20-21. The Florida legislature has codified the internal affairs doctrine for certain types of claims, including alleged breaches of fiduciary duties. *See* Nov. 2 Order at p. 26, n. 2. Specifically, the Florida Business Corporation Act ("FBCA") provides that "[t]his act does not authorize this state to regulate the organization or internal affairs of a foreign corporation authorized to transact business in this state." Fla. Stat. § 607.1505(3); *see also Chatlos Found., Inc. v. D'Arta*, 882 So.2d 1021, 1023 (Fla. 5th DCA 2004) (holding that claims "involving 'internal affairs' of corporations, such as the breach of fiduciary duties, are subject to the laws of the state of incorporation.") (quoting *Davis & Cox v. Summa. Corp.*, 751 F.2d 1507, 1527 (9th Cir. 1985)); Restat. 2d. of Conflict of Laws, § 309 (law of state of incorporation generally determines director and officer liability to corporation, creditors and shareholders).

The language of section 1505(3) of the FBCA "came verbatim from section 15.05 of the Model Business Corporation Act" ("MBCA"), *Legal Envtl. Assistance Found. v. Dep't of Envtl. Protection*, 702 So. 2d 1352, 1355 (Fla. 1st DCA 1997) (Benton, J.,

4

dissenting), and Florida courts have deemed the MBCA's official commentary to be persuasive in interpreting the FBCA. *See Winner v. Cataldo.*, 559 So. 2d 696, 697 (Fla. 3d DCA) (applying MBCA official commentary to interpret FBCA). The official commentary to section 15.05 of the MBCA states that the section "preserves the judicially developed doctrine that internal affairs are governed by the state of incorporation even when the corporation's business and assets are located primarily in other states." MBCA 15.05, Official Comment, pp. 15-16. Under these principles, Florida's choice-of-law analysis for fiduciary duty claims is a one-step test that depends solely upon the identity of the sate of incorporation. In this case, Far & Wide is a Delaware corporation; therefore, under the codified internal affairs doctrine, Delaware law applies to Counts III through XII of the Amended Complaint.[3]

The application of the internal affairs doctrine does not contravene the holding in *Grupo Televisa, S.A. v. Telemundo Communs. Group, Inc.*, 485 F.3d 1233 (11th Cir. 2007), that "Florida resolves conflict-of-laws questions according to the 'most significant relationship' test outlined in the Restatement (Second) of Conflict of Laws." *Id.* at 1240 (citing *Bishop v. Fla. Specialty Paint Co.*, 389 So. 2d 999, 1001 (Fla. 1980)).[4] Section 145 provides that "[t]he rights and liabilities of the parties with respect to an issue in tort are determined by the local law of the state which, with respect to that issue, has the most significant relationship to the occurrence and the parties under the principles

---

[3]

The parties are in agreement that Counts I and II, which are statutory claims based on FDUTPA, are governed by Florida law; and that Counts XIII through XVI, the equitable bankruptcy priority claims, are governed by federal bankruptcy law.

[4]

*Telemundo* is the Eleventh Circuit's most recent statement of Florida's choice-of-law rules.

stated in § 6." Restat, 2d of Conflict of Laws, § 145. Section 6, in turn, provides that "[a] court, subject to constitutional restrictions, will follow a statutory directive of its own state on choice of law." *Id.* at § 6. Under the Restatement, then, I must follow the statutory direction of the FBCA which has codified the internal affairs doctrine and apply the law of the State of Delaware to the breach of fiduciary duties claims (Counts III through XII).

B.     Derivative Creditors' Claims

I have previously dismissed with prejudice all direct claims alleged by Plaintiff in the original complaint on behalf of all the creditors in this action. (*See* Nov. 2 Order). These claims were based upon the purported assignment of claims belonging to Far & Wide's individual creditors. In dismissing them, I concluded that Plaintiff lacks standing to bring direct claims on behalf of the creditors because Plaintiff has failed to obtain assignments from *all* of the creditors. (*See* Nov. 2 Order at p. 19). Plaintiff now seeks to circumvent the dismissal of the creditors' claims by alleging mirror images of each of the Debtors' claim brought in the alternative and derivatively on behalf of all creditors of the estate of the Far & Wide corporate entity. Defendants argue that the derivative claims must be dismissed with prejudice as procedurally barred and entirely duplicative of the direct claims. Plaintiff responds that the claims are brought in the "alternative" and that this Court has expressly recognized, in the Nov. 2 Order, that Plaintiff has standing to bring a derivative action on behalf of all the creditors. Mukamal's argument misses the point.

As discussed in my previous order, "creditors of an insolvent corporation have standing to maintain derivative claims against directors on behalf of the corporation for

6

breaches of fiduciary duties." *N. Am. Catholic Programming Found. v. Gheewalla*, 930 A.2d 92, 101-02 (Del. 2007). However, a "derivative" action is a suit brought "in the corporation's name where those in control of the company refused to assert a claim belonging to it." *Aronson v. Lewis*, 473 A.2d 805, 811 (Del. 1984); *see also Mims v. Fail (In re VarTec Telecom, Inc.)*, Bankr. No. 04-81694-HDH-7, Adv. No. 06-03506, 2007 WL 2872283, at **3-4 (Bankr. N.D. Tex. Sept. 24, 2007) ("The essence of a derivative action is that it is brought in the stead of a direct action brought by the corporation itself."). In the context of a bankrupt company, a derivative action is brought by the creditors themselves, on behalf of all the creditors, because the Trustee did not bring such a claim against the debtor's directors and officers on behalf of the estate. (Nov. 2 Order at p. 29).

In this case, the Plaintiff is seeking to assert each substantive claim twice: both as a direct claim against the directors and officers on behalf of the estate, and as a derivative claim against the directors and officers on behalf of the creditors. He cannot do so. The fact that he pleads these claims in the alternative is of no avail. If the direct claims fail on the merits, so do the derivative claims. On the other hand, if the direct claims succeed on the merits, the derivative claims are barred because the directors and officers cannot be liable twice for the same claims. As such, Counts I, III, IV, V, VI and VII, brought in the alternative and as derivative claims of the creditors, are procedurally barred and duplicative, and must be dismissed with prejudice. My ruling is not that a Trustee such as Mukamal does not have standing, under Delaware law, to bring creditors' derivative claims under the appropriate circumstances; rather, having

7

•

chosen to pursue the substantive claims as direct Debtors' claims, he is procedurally barred from re-asserting them as derivative claims.

C.    Direct Debtors' Claims

    a.    Florida's Deceptive and Unfair Trade Practices Act ("FDUTPA") (Count II)

In Count II, Plaintiff asserts a claim against the Individual Defendants and Wellspring under FDUTPA, Fla. Stat. § 501.211, based on these defendants' alleged aggressive marketing and acceptance of customer deposits for travel and for continuing to accept services from trade vendors when, given the financial condition of the company, the Defendants knew or should have known that the customers would never travel and the vendors would never get paid. (Opp'n to Motion to Dismiss, DE 54 at p. 6). According to Plaintiff, customers and vendors were deceived by, and acted to their detriment because of, the Defendants' concealment of their knowledge that when Far & Wide accepted customers' deposits and travel services from vendors, these customers would never travel and these vendors would never be paid. (Id.). Plaintiff further alleges that these customers and vendors made the deposits and provided the travel services at their peril. As a result, Far & Wide incurred additional liabilities of between $30 to $50 million between January and September 2003, and Far & Wide cannot pay this additional liability. (Id.). Defendants argue that the FDUTPA claim must be dismissed because Plaintiff has failed to establish the required element of damage to Far & Wide, and that, in addition, Plaintiff is barred from bringing the claim under the doctrine of in pari delicto.

Plaintiff responds that the incurrence of debt to be repaid as a direct and proximate cause of the wrongful conduct, coupled with the Defendants' knowledge that

8

the debt would never be repaid, sufficiently establishes the element of damages under FDUTPA. Plaintiff further argues that because he is a trustee asserting FDUTPA claims which serve the strong remedial public policy purposes of the State of Florida, the doctrine does not apply. As discussed below, I conclude that the FDUTPA claim must be dismissed with prejudice because the incurrence of debt by a corporation in an attempt to continue its operation is not a recognized harm under the statute. Further, the *in pari delicto* doctrine prevents Far & Wide from recovering damages from its own wrongdoing.

                1.    Actual Damages

To assert a claim under FDUTPA, the plaintiff must allege: (1) a deceptive act or unfair practice; (2) causation; and, (3) actual damages. *KC Leisure, Inc. v. Haber*, 972 So. 2d 1069, 1073 (Fla. 5th DCA 2008).[5] The third element is required by § 501.211, Florida Statutes, which provides that "[i]n any action brought by a person who has suffered a loss as a result of a violation of this part, such person may recover actual damages, plus attorney's fees and court costs as provided in s. 501.2105." Fla. Stat. § 501.211. It is well-settled in Florida that actual damages under FDUTPA consists of "the difference in the market value of the product or service in the condition in which it was delivered and its market value in the condition in which it should have been delivered according to the contract of the parties. [. . .] A notable exception to the rule

---

[5]

While Defendants do not concede that the first two elements have been established, their argument is based solely on the contention that Plaintiff has not pled actual damages to Far & Wide. Because the failure to plead any one of the three elements is dispositive, this Order only addresses the element of actual damages.

may exist when the product is rendered valueless as a result of the defect-then the purchase price is the appropriate measure of actual damages." *Rollins, Inc. v. Butland*, 951 So. 2d 860, 869 (Fla. 2d DCA 2006) (quoting *Rollins, Inc. v. Heller*, 454 So. 2d 580, 585 (Fla. 3d DCA 1984)). Actual damages do not include consequential damages. *Id.* (citing *Fort Lauderdale Lincoln Mercury, Inc. v. Corgnati*, 715 So. 2d 311, 314 (Fla. 4th DCA 1998)); *Urling v. Helms Exterminators, Inc.*, 468 So. 2d 451, 454 (Fla. 1st DCA 1985) (holding that FDUTPA allows recovery for diminished value of goods received but does not authorize recovery of special or consequential damages). Plaintiff argues that following the 2001 legislative amendment to FDUTPA, the general damages standard stated above is not applicable for a loss suffered by persons other than the consumer. However, cases decided after the 2001 amendment, including the case Plaintiff relies on, continue to apply this standard. *See Rutland*, 951 So. 2d at 869 (decided in 2006). Moreover, which standard to apply need only be determined if Plaintiff satisfies the threshold issue of sufficiently pleading actual damages.

The 2001 amendment has been interpreted to broaden the class of plaintiffs that may bring an FDUTPA claim for damages. *See Niles Audio Corp. v. OEM Systems Co., Inc.*, 174 F. Supp.2d 1315, 1319 (S.D. Fla. 2001). The prior language of the statute provided that "[i]n any individual action brought by a *consumer* who has suffered a loss as a result of a violation of this part, such *consumer* may recover actual damages." *Id.* By replacing the word "consumer" with "person", the legislature intended "to allow a broader base of complainants, including competitors ..., to seek damages." *Id.* at 1320. While the amended language envisions a broader class of plaintiffs, the requirement that the plaintiff must have suffered actual damages has not changed.

10

In this case, the Amended Complaint does not plead actual damages suffered by Far & Wide. The damage to the consumers– i.e. not being able to take the vacations they paid for– and the damage to the creditors– i.e. not being paid for the travel services they provided– do not give raise to a cause of action by Far & Wide. The Amended Complaint must plead actual damages suffered directly by Far & Wide to avoid dismissal, but the Amended Complaint has failed to do so.

Mukamal argues that the additional $30-$50 million incurred by Far & Wide qualifies as actual damages under the statute. Mukamal is asking the Court to conclude that Far & Wide was damaged by accepting payment and travel services it needed to continue its business. However, Mukamal has not provided any authority for his novel argument, and my independent review has not uncovered any case law on point. Nothing in the text of the statute or the case law allows for such a broad interpretation of the damages requirement. Therefore, because Mukamal has failed to adequately plead actual damages incurred by Far & Wide as a result of the allegedly deceptive trade practice, the FDUTPA claim must be dismissed with prejudice. *Cf. Army Aviation Heritage Found. & Museum, Inc. v. Buis,* 504 F. Supp. 2d 1254, 1270 (N.D. Fla. 2007) ("[I]n the absence of actual damages attributable to a FDUTPA violation, Plaintiff's claim must be dismissed.").

2.   *In Pari Delicto*[6]

---

[6]

Although my conclusion that the Amended Complaint has failed to plead the required element of damages is dispositive as to the FDUTPA claim, I will discuss the application of the *in pari delicto* doctrine.

11

*In pari delicto* is both an affirmative defense and an equitable defense which, "[b]roadly speaking, ... prohibits plaintiffs from recovering damages resulting from their own wrongdoing." *O'Halloran v. PricewaterhouseCoopers LLP*, 969 So. 2d 1039, 1044 (Fla. 2d DCA 2007) (quoting *Nisselson v. Lernout*, 469 F.3d 143, 151 (1st Cir. 2006)); *see also Hall v. Hall*, 112 So. 622, 628 (Fla. 1927) (referring to "the universal rule of our law that one in a court of justice cannot complain . . . of another's wrong whereof he was a partaker") (quoting Bishop, Marriage and Divorce, § 1548). The premises for the defense are twofold. First, "courts should not lend their good offices to mediating disputes among wrongdoers." *Id.* Second, "denying judicial relief to an admitted wrongdoer is an effective means of deterring illegality." *Id.* In certain circumstances, "[a]pplication of the doctrine may yield to public policy   considerations...; since the principle is founded on public policy, it may give way to a supervening public policy." *O'Halloran*, 969 So. 2d at 1044, n. 4 (quoting *Kulla v. E.F. Hutton & Co.*, 426 So. 2d 1055, 1057 n.1 (Fla. 3d DCA 1983)).   A complaint is properly dismissed where the allegations on the face of the complaint make clear that the doctrine applies.  *See Edwards*, 437 F.3d at 1156.

The Eleventh Circuit and Florida Courts have applied the *in pari delicto* doctrine against a bankruptcy trustee. *See, e.g., Official Comm. of Unsecured Creditros PSA, Inc. v. Edwards*, 437 F.3d 1145, 1150 (11th Cir. 2006) (applying the *in pari delicto* doctrine against a bankruptcy trustee asserting a violation of the federal RICO statute); *O'Halloran*, 969 So. 2d at 1044-45 (ruling that the *in pari delicto* doctrine applies where the agent's misconduct is imputed to the corporation.).   The reason is that a "a bankruptcy trustee stands in the shoes of the debtor." *O'Halloran,* 969 So. 2d at 1046

12

(quoting *Edwards*, 437 F.3d at 1150). Therefore, if a claim of the debtor would have been subject to the *in pari delicto* defense at the commencement of the bankruptcy, then the claim, when asserted by the trustee, is subject to the same defense. *Id.*

In *O'Halloran*, the District Court of Appeal of Florida, Second District, explained that "[w]here the defense of *in pari delicto* is asserted against a corporate entity based on the misconduct of the corporation's agents, it must be determined whether the misconduct of those agents is properly imputed to the corporation." 969 So. 2d at 1044. Generally, the corporation is liable for the acts of its directors and officers. *See id.* at 1045. However, if the directors and officers act adversely to the corporation's interests, the knowledge and misconduct of the directors and officers is not imputed to the entity. *Id.* This exception to the general rule is known as the "adverse interest exception." *Id.* The adverse interest exception is not available where a corporation is "wholly dominated by persons engaged in the wrongdoing [because] the corporation has itself become the instrument of wrongdoing." *Id.*   Therefore, "when there is no innocent member of management who could act to thwart the wrongdoing," the adverse interest exception is not available and the wrongdoing is imputed to the corporation. *Id.* By way of example, the *O'Halloran* court compared a corporation whose primary existence was as a perpetrator of a Ponzi scheme, which cannot be said to have suffered an injury, and a corporation which is itself the victim of looting by its agents. *Id.*

In Florida, the application of the doctrine turns on whether the corporation benefitted from the alleged misconduct. *Id.* If the actions of the directors and officers are intended to benefit the corporation, or if the actions actually cause a short- or long-term benefit, the exception does not apply. *See Beck v. Deloitte & Touche*, 144 F.3d

13

732, 736 (11th Cir. 1998) (applying Florida law). "Under Florida law, the knowledge of a corporate officer whose fraud or misbehavior brings short-term gain to the corporation, or merely injures a third party, is imputed to the corporation, even if the officer's misbehavior ultimately causes the corporation's insolvency." *Id.* (citing *Seidman & Seidman v. Gee,* 625 So. 2d 1, 2-3 (Fla. 3d DCA 1992) (per curiam)).

Whether *in pari delicto* can be applied to an FDUTPA claim seems to be a question of first impression in Florida. As a court sitting in diversity, my "objective is to determine the issues of state law as [I] believe the Florida Supreme Court would." *State Farm Fire and Cas. Co. v. Steinberg,* 393 F.3d 1226, 1231 (11th Cir. 2004) (citing *CSX Transp., Inc. v. Trism Specialized Carriers, Inc.,* 182 F.3d 788, 790 (11th Cir.1999); *Fioretti v. Massachusetts General Life Ins. Co.,* 53 F.3d 1228, 1235 (11th Cir.1995)). "In the absence of definitive guidance from the Florida Supreme Court, we follow relevant decisions of Florida's intermediate appellate courts." *Id.* Where there are no precedents from Florida's intermediate appellate courts, "we may consider the case law of other jurisdictions that have examined similar policy provisions." *Id.* In light of the similarities between FDUTPA and other states' laws on deceptive and unfair trade practices, as well as considering Florida courts' decisions on the *in pari delicto* doctrine, I conclude that the Florida Supreme Court would follow these precedents under FDUTPA as well.

In *Baena v. KPMG LLP,* 453 F.3d 1 (1st Cir. 2006), for example, the First Circuit applied the Massachusetts analogue to FDTUPA and, in applying the doctrine to affirm dismissal of claim for unfair and deceptive trade practices, stated:

14

> A corporation is a legal entity managed by a board and officers, represented by agents, and owned by stockholders. The question of just whose actions should be imputed to the "the corporation," and what exceptions should exist to such imputation, arises naturally in applying the *in pari delicto* doctrine, as in many other contexts. ... In this case, the trustee himself asserts that the chairman of the board, the CEO and the managing director were all knowing parties. The approval and oversight of such statements is an ordinary function of management that is done on the company's behalf, which is typically enough to attribute management's actions to the company itself.

*Id.* at 7. The court thus rejected the trustee's argument that the *in pari delicto* doctrine should not apply under the adverse interest exception and the notion that the doctrine should not apply where "innocent decision-makers" could have prevented the harm. In so doing, the court noted that where top management overstated the corporations' earnings to facilitate stock sales or acquisitions, while not an interest of the company in the long-term, it profits the company in the first instance. *Id.* The court also ruled that the fact that the implicated managers also benefitted does not make the interests of the managers adverse to those of the corporation. *Id.* at 7-8.

In this case, if the alleged misconduct of the Defendants is imputed to Far & Wide, the FDUTPA claim is barred by the *in pari delicto* doctrine. Under Florida law, the question of imputation turns on the adverse interest exception. Under the facts of this case as alleged in the Amended Complaint, the exception does not apply. First, the Amended Complaint alleges that the directors and officers of Far & Wide, including the two individuals who held the position of CEO/President during the relevant times, its CFO and other managers, knowingly and intentionally participated in the alleged misconduct. Therefore, Far & Wide was a direct participant in the unfair and deceptive trade practices which resulted in accruals to Far & Wide. Where, as here, "there is no

15

innocent member of management who could act to thwart the wrongdoing," the adverse interest exception is not available and the wrongdoing is imputed to the corporation. *Cf. O'Halloran,* 969 So. 2d at 1045.

Second, the allegations in the Amended Complaint demonstrate that Defendants' actions bestowed benefits to the corporation by allowing it to continue collecting payments from customers and obtaining services from vendors thereby eliminating any possible application of the adverse interest exception. *Cf. Beck,* 144 F.3d at 736 ("Florida law requires that a corporate officer's interest be entirely adverse for the exception to apply (i.e., his actions must neither be intended to benefit the corporation nor actually cause short- or long-term benefit to the corporation)."). Since the adverse interest exception does not apply, the alleged misconduct of Far & Wide's former officers and directors is imputed to the corporation. Mukamal, as trustee, stands in the shoes of Far & Wide and is precluded by the doctrine of *in pari delicto* from bringing an FDUTPA claim against Defendants. Because there are no set of facts that Plaintiff may allege to cure this deficiency, the FDUTPA claim is dismissed with prejudice. *See, e.g., Case v. Riley,* Case No. 07-11489, 2008 U.S. App. LEXIS 6434, **3-4 (11th Cir. Mar. 25, 2008) (per curiam) ("Where a more carefully drafted complaint might state a claim, a plaintiff must be given at least one chance to amend the complaint before the district court dismisses the action with prejudice, unless ... a more carefully drafted complaint could not state a valid claim.") (internal quotations omitted).

b.     Breach of Fiduciary Duty of Loyalty and Related Aiding and Abetting Claims (Counts VIII, IX and X)

In dismissing the disloyalty claims in the original complaint, I stated that Plaintiff had failed to state a claim because the focus of his allegations revolved around breaches of duties purportedly owed to the creditors of Far & Wide. (Nov. 2 Order at p. 37). I noted that to survive dismissal of a claim for breach of fiduciary duty, Plaintiff must allege the violation of duties owed to Far & Wide itself or to its minority shareholders.[7] (*Id.*). Further, I stated that, of significance, the original complaint was silent as to who constitutes the minority shareholders and how the majority shareholder's actions breached the duty of loyalty to them. For example, the original complaint did not allege that the interests of the Wellspring defendant were favored over those of other shareholders, or that Individual Defendants' decision-making failed to increase the value of Far & Wide's equity as to **all** shareholders. Finally, I observed that the original complaint did not even allege that the Debtors suffered any loss on the loan transactions in questions. In dismissing these claims without prejudice, I cautioned plaintiff that the claims of breaches of the duty of loyalty had to be pled with more particularity, should not be commingled with allegations of bad faith claims, and should include individualized allegations as to each of the defendants rather than referring to them collectively. Mukamal has attempted to cure some of these deficiencies in his Amended Complaint.

Mukamal argues that the Amended Complaint has sufficiently pled disloyalty claims arising out the Defendants' desire to sell the company and pursuing that desire

---

[7]

As discussed in section III.A of this Order, Delaware law applies to these claims.

to the exclusion of taking other value-creating or value-preserving measures. He further alleges that the Defendants' pursuit of the sale of the entity to the exclusion of other more appropriate measures designed to preserve value led to the entering of a secured transaction with Wellspring in October 2002. He argues that by becoming a secured creditor, Wellspring was treated preferably over other shareholders. In addition, he states that since the Defendants were interested insider directors, the Defendants are not entitled to the protection of the business judgment rule and must instead prove that the 2002 loan transaction was "entirely fair."

Despite Plaintiff's allegations that the Defendants were not disinterested directors or independent in their decision making, Plaintiff once again fails to meet the threshold requirement that the challenged transaction harmed Far & Wide.    Instead, the allegations in the Amended Complaint continue to be focused on claimed breaches of the duty of loyalty owed to Far & Wide's creditors and not to the entity itself or its minority shareholders.  Mukamal's attempt to include conclusory allegations that the Defendants' conduct "was at the expense of and to the detriment of the Far & Wide corporate entity and its assets" does not "nudged [his] claims across the line from conceivable to plausible," *Bell Atl.*, 127 S. Ct. at 1974, as is required to survive a motion to dismiss.  The Amended Complaint continues to be devoid of any allegation that the interests of the majority shareholders were favored over those of the minority shareholders; it also does not allege that the Individual Defendants' decision-making failed to increase the value of **all** shareholders, not just that of the majority shareholders or the inside directors. Instead, the Amended Complaint alleges that the Individual Defendants were operating Far & Wide with the goal of generating a return for all

18

shareholders alike. In essence, the Amended Complaint is alleging that the Defendants placed the interests of the shareholders above those the creditors. This is fatal to Plaintiff's claims since the duty of loyalty required the Defendants to favor the entity and shareholders over the creditors as they did.

The Amended Complaint also alleges an improper prolongation of Far & Wide's operations which resulted in Far & Wide's inability to pay its creditors and led to thousands of customers being stranded or unable to take pre-paid trips. Neither of these alleged breaches are sufficient to support a claim of breach of duty of loyalty to the entity or its minority shareholders. As explained in the Nov. 2 Order, "Delaware law imposes no absolute obligation on the board of a company that is unable to pay its bills to cease operations and to liquidate. Even when the company is insolvent, the board may pursue, in good faith, strategies to maximize the value of the firm." *Trenwick Am. Litig. Trust v. Ernst & Young, L.L.P.*, 906 A.2d 168, 203 (Del. Ch. 2006). Similarly, Plaintiff does not explain how the decision to acquire additional loans or to extend the maturity date on the existing loans harmed the entity or the minority shareholders. Instead, Plaintiff concedes that these actions were taken in an attempt to prevent Far & Wide from entering bankruptcy and to sell Far & Wide for a profit – a sale that would have benefitted **all** shareholders. As I have previously stated, "the mere act of incurring additional debt in the face of insolvency, alone, does not establish bad faith or disloyalty if the purpose was to maximize the value of the firm as to all shareholders." (Nov. 2 Order at p. 38).

As to the alleged conflicts-of-interest, the allegations are premised on a divergence of interests as between the Defendants and Far & Wide's creditors, not

19

between Defendants and the entity or its minority shareholders. *Gheewalla* rejects the purported existence of a duty to creditors "[w]hen a solvent corporation is navigating in the zone of insolvency... [since] the focus for Delaware directors does not change: directors must continue to discharge their fiduciary duties to the corporation and its shareholders." *Gheewalla*, 930 A.2d at 10; Nov. 2 Order at p. 28, n. 24. Likewise, while Plaintiff alleges that Wellspring, the majority shareholder, received a secured loan, there are no allegations that minority shareholders unsuccessfully sought to receive this loan, or that the entity could have received an unsecured or secured loan at better terms. The Amended Complaint still does not explain how accruing additional debt in October 2002 harmed Far & Wide or how Debtors suffered any loss from the loan transactions. At best, the secured loan damaged existing creditors as it favored one creditor over another, but the transaction did not damage the entity or its minority shareholders. Finally, the new FDUTPA claim alleges harm only to the customers and vendors, not to Far & Wide or its minority shareholders. In sum, the disloyalty and related aiding and abetting claims fail because Plaintiff has not plead a duty owed to Far & Wide or its minority shareholders. Because the Amended Complaint fails to adequately allege the threshold requirement that the Defendants' actions harmed Far & Wide and its minority shareholders or that they enriched Defendants, Counts VIII, IX, and X, consisting of the disloyalty claims, must be dismissed with prejudice.[8]

---

8

Plaintiff has already been given an opportunity to amend the complaint; since the amended complaint continues to fail to allege a valid cause of action, I dismiss these claims with prejudice. See *Case v. Riley*, Case No. 07-11489, 2008 U.S. App. LEXIS 6434, **3-4 (11th Cir. Mar. 25, 2008) (per curiam) ("Where a more carefully drafted complaint might state a claim, a plaintiff must be given at least one chance to amend the complaint before the district court dismisses the action with prejudice, unless ... a more carefully drafted

c.      Breach of Fiduciary Duty of Care Claims (Counts XI and XII)

I dismissed the duty of care claims in the Original Complaint because of the inadequacy of "lumping together" all of the Individual Defendants. (*See* Nov. 2 Order at pp. 40-41). In the current Motion to Dismiss, Defendants argue that these claims must be dismissed because the Amended Complaint still fails to make any individualized allegations against Bakes, Gremse, McKey or Toll. Plaintiff responds that the Amended Complaint sufficiently alleges that Bakes, McKey, Toll and Gremse refused to acknowledge, let alone implement, the expert advice of KPMG since the heightened pleading requirements of Rule 9(b) are inapplicable to this case. However, Plaintiff's discussion of Rule 9(b) is beside the point because Defendants do not argue that the Amended Complaint is subject to heightened pleading requirements of fraud. Instead, Defendants note that Plaintiff has failed to correct the pleading deficiencies that resulted in the dismissal of these claims from the Original Complaint. Plaintiff attempts to save its insufficient allegations through explanatory statements in its opposition papers, including: (1) "When all defendants are mentioned, the action is the product of action by both officers and directors." (Response, DE 54 at p. 16); (2) "When Defendants Bakes, Toll, Gremse, and McKey are mentioned together, they are acting in their capacity as officers." (*Id.*); (3) "...it is clear that when Defendants Toll and Gremse are mentioned, they are acting in their sole capacities as officers." (*Id.*); and, (4) "Likewise, when Defendants Bakes, McKey, Stanton, Mariano, Feldman and Fortin are mentioned, they are acting in their collective capacity as board of directors." (*Id.*). Plaintiff adds that it is

complaint could not state a valid claim.") (internal quotations omitted).

"not uncommon for officers and directors to take action collectively." (Id.). None of these explanations, however, are found in the Amended Complaint. Instead, the Amended Complaint continues to lump the Defendants together.

Even if the allegations were sufficiently pled, the duty of care claims must be dismissed for failure to state a cause of action. A duty of care claim must be premised on allegations that the board failed to exercise informed decisions. See, Smith v. Van Gorkom, 488 A.2d 858, 872-873 (Del. 1985) ("[A] director's duty to exercise an informed business judgment is the nature of a duty of care, as distinguished from a duty of loyalty."). Defendants argue that a due care claim cannot be premised on a director's decision not to implement the recommendations of experts they had retained. In response, Plaintiff argues that Brehm v. Eisner, 746 A.2d 244 (Del. 2000) and Cede & Co. v. Technicolor, Inc., 634 A.2d 345 (Del. 1993) recognize a due care violation where fiduciaries fail to follow expert's advice as pled in the Amended Complaint. Plaintiff has misinterpreted Brehm and Cede.

In Brehm, the court discussed "whether the directors are to be 'fully protected' (i.e., not held liable) on the basis that they relied in good faith on a qualified expert." Brehm, 746 A.2d at 261. Thus, the question was not whether the duty of care was breached when a director did not rely on experts' advice, as is alleged here, but whether relying on faulty advice can lead to liability. In Cede, the court stated that the duty of care is breached when a director makes an uninformed decision. Cede, 634 A.2d at 367. There is no discussion as to whether a director can be liable for his failure to implement advice given by a retained expert. Additionally, I agree with Defendants that basing liability on a director's failure to implement expert advice would result in boards

choosing not to engage experts due to the resulting risk of litigation if the board's business judgment is diverged from the experts' recommendations.

Recently, the Delaware Court of Chancery rejected Plaintiff's argument that failure to follow experts' advise can form the basis of a duty of care claim. In *Gantler v. Stephens*, No. 2392, 2008 Del. Ch. LEXIS 20 (Del. Ch. Feb. 14, 2008), the plaintiffs alleged that the defendants had breached their duties of care as directors and officers when they, among other things, rejected an offer to buy the company and terminated the sales process in order to preserve their positions as directors and officers. According to the plaintiffs, because of the defendants' alleged breach, the plaintiffs were not able to receive a value-maximizing bid for their stock. The court dismissed the breach of duty of care breach because the complaint specifically indicated that the board received expert advice and deliberated; "[t]he fact the Board ultimately rejected an offer its Financial Advisor considered fair does not support an inference of misconduct... Plaintiffs' claim merely attempts to convert what might be a duty of care claim (e.g., the Directors were negligent in not conducting a more fulsome discussion of the First Place proposal) into a disclosure claim." *Id.* at *76.

Here, Mukamal does not allege that the board made an uninformed decision with regards to the additional loans and its decision not to seek bankruptcy protection. Thus, Mukamal has not properly pled a duty of care violation. Further, the Amended Complaint concedes that the Defendants hired KPMG to inform its decision. Therefore, any amendment to the claim would be futile: the hiring of an expert refutes any inference that the board was uninformed. As in *Gantler*, the fact the Defendants ultimately rejected KPMG's advice does not support an inference of misconduct. *Cf. id.*

23

For these reasons, Counts XI and XII must be dismissed with prejudice. *See supra,* n.

7.

C.    Bankruptcy Claims: Equitable Subordination, Disallowance of Claim, and Recharacterization of Purported Debt Claims (Counts XIII-XVI)

Defendants Feldman, Fortin, Mariano and Stanton request dismissal with prejudice of Count XIII against them because none of them have ever filed individual proofs of claim in the pending bankruptcy. For the same reason, Defendant Wellspring requests that Counts XIV through XVI against it be dismissed with prejudice. Plaintiff concedes that these Defendants have not filed individual claims and that these claims, as pled against these particular defendants, must be dismissed with prejudice. These claims, however, remain as plead against defendants Loan Capital Funding, LLC ("LCF"), Bakes, McKey, Toll, and Gremse.[9]

IV.    Conclusion

For the reasons discussed above, it is hereby ORDERED AND ADJUDGED:

1.    Counts II, IV, and VI of the Original Complaint [DE 1] are DISMISSED WITH PREJUDICE.

2.    Defendants' Motion to Dismiss Counts I through XIV of the Amended Complaint with Prejudice [DE 48] is GRANTED.

3.    Counts I, III, IV, V, VI and VII (derivative creditors' claims) are DISMISSED WITH PREJUDICE.

4.    The FDUTPA Claim, Count II, is DISMISSED WITH PREJUDICE.

---

[9]

I have not determined the merits or sufficiency of these claims as against these defendants. Rather, these claims remain viable because they were not addressed in the Motion to Dismiss.

24

5.   The duty of loyalty claims, Counts VIII-X, are DISMISSED WITH PREJUDICE.

6.   The duty of care claims, Counts XI and XII, are DISMISSED WITH PREJUDICE.

7.   The Bankruptcy Claims, Counts XIII-XVI, as pled against Feldman, Fortin, Mariano, Stanton and Wellspring, are DISMISSED WITH PREJUDICE.

8.   The Clerk of Court is instructed to TERMINATE the following Defendants from this action: (1) Wellspring Capital Management LLC; (2) Carl M. Stanton; (3) Greg S. Feldman; (4) David C. Mariano; and, (5) Jason B. Fortin.

9.   The parties are instructed to file a joint status report within ten (10) days from the date of this Order advising the Court of the status of Counts XIII-XVI as pled against Defendants Loan Capital Funding, LLC., Bakes, McKey, Toll and Gremse, and of the parties' intent to proceed on these claims.

DONE AND ORDERED in Chambers at Miami, Florida, on this _19_ day of May, 2008.

THE HONORABLE ALAN S. GOLD
U.S. DISTRICT JUDGE

cc:
U.S. Magistrate Judge Chris M. McAliley
Counsel of Record

25